TPIOMPSON, J.
 

 The question presented in this case in its ultimate analysis is the legality and validity of an increased assessment for purposes of local taxation for the year 1918 on timbered lands owned by the plaintiffs situated in the parish of Sabine.
 

 The petition sets forth in substance that after due return had been made of plaintiffs’ lands for purposes of taxation, and after due assessment thereof by the assessor, and after due approval of said assessment by the police jury acting as a board of reviewers, the assessor raised the valuation and increased the assessment without any notice whatever to the plaintiffs, all in violation of and contrary to the provisions of law.
 

 That the original assessment as made and accepted by the police jury amounted to $774,670, and that this amount was increased thereafter by the assessor to $1,094,740.
 

 After the suit was filed, all state taxes on the assessment as increased were paid, as were likewise all local taxes on the assessment as originally made before the increase. The amount of the assessment attacked as illegal is $319,070, and the local taxes claimed thereon amount to $5,425.16.
 

 It is undisputed that an original valuation (the assessor calls it a tentative assessment) was placed on the assessment sheet under the heading “Actual Value as Fixed by Taxpayer” of $774,670, and a valuation of $1,-' 094,740 was placed under the heading “Actual Values as Fixed by Police Jury.” It is also undisputed that the plaintiffs’ agent, S. N. Thomas, returned this list to the assessor within the time required by law, and that he signed the affidavit thereto, though the oath was not actually administered to him.
 

 It is a matter of controversy as to whether the list was mailed to the assessor or was delivered to him in person by Thomas.
 

 But the more serious and the real, vital controversy is as to whether the increased valuation was made before the list was submitted to and approved by the police jury, or was made by the assessor after the police -jury had acted on the assessments of the parish as a board of reviewers and after the lists had been submitted to the board of state affairs.
 

 It is contended by the assessor that he received the list from Thomas, agent for plaintiffs, through the mails; that he placed the valuation in the column under the head of taxpayer’s váluation, and later made the valuation in the column of valuation by the police jury; that the assessment as thus increased was submitted to and approved by the police jury. 1-Ie stated that he did not recall the visit of Thomas to his office for the purpose of making the returns for assessment, though he admitted that Thomas may have done so. We quote a part of the assessor’s testimony as follows:
 

 “Q. Then, what does the figures represent in the first column?
 

 “A. The first column — those are tentative
 
 *291
 
 figures put there before the instructions from the state board was given.
 

 “Q. Then, I understand from your testimony that you made the second column .of figures after the state board had issued to you instructions as to this assessment and other assessments of property in this parish?
 

 “A. Yes, sir.
 

 “Q. Now, Mr. Vines, as a matter of fact, you did not place the last figures that you say represent the assessment of the plaintiffs’ property until after this sheet had been before the board of affairs and then returned to you?
 

 “A. These figures were placed on there before the sheet went to the state board of affairs.
 

 “Q. Why, then, did you have two sets of figures and two values?
 

 “A. The first value was just a tentative value placed there before the instructions from the board were placed in my hands.
 

 “Q. Then, after you read these instructions, you made up the third column of figures?
 

 ‘‘A. Yes, sir.”
 

 The proceedings of the police jury, acting as a board of reviewers, do not show that any special action was had on the assessments under consideration. The resolution merely states that the assessment rolls as furnished by the assessor were accepted, subject to certain specified exceptions which had no reference to the plaintiffs’ assessment.
 

 Mr. Thomas, the agent for the Gould estate, testified that he made the return for assessment of the timber lands of the Gould estate for the year 1918; that he signed the assessment sheet in the presence of the assessor in the assessor’s office in the courthouse building; that he gave the assessor the classification and estimates of the timber and the valuation; and that the assessor put down the valuation in the taxpayer’s column on the assessment sheet; that this valuation was made up by and between the assessor and himself and agreed to by the assessor. I-Ie further testified that no valuation was placed by the assessor in the column No. 3, headed “Police Jury”, that he never received any notice from the assessor or the police jury of any dissatisfaction as to the valuation as fixed and agreed to by the assessor, and was not aware of any contemplated increase of said assessment by either the assessor or the police jury.
 

 Thomas is corroborated to some extent by Odom, a service car man who was employed to convey Thomas to Colfax, Natchitoches, Many, and Leesville, for the express purpose of rendering returns of the timbered lands for assessment.
 

 Odom testified that after arriving at Many he and Thomas went to the office of the assessor and failing to find him in the office, they went out in town to hunt for him. After looking around for a while, some one informed them that the assessor was then in his office. That they went back to the office and Thomas went in and he remained on the outside. That in about 30 minutes Thomas came out and remarked that he was through and that they could go on to Leesville.
 

 On June 1, 191S, the chairman of the board of state affairs wrote to Mr. Thos. Wingate a letter, in which it was stated that the board had not yet adopted the value of stumpage for the year 1918 and whatever values were adopted would be made to apply throughout the state.
 

 “The local assessor is justified in establishing values and the police jury will pass on same for local purposes, and will be subject to review by this board for state purposes. These matters will be taken up during the months of June and July as soon as the abstracts are filed with us by the various assessors.”
 

 It will be observed that when the foregoing letter was written the police jury of Sabine parish had already acted, and had adjourned as a board of reviewers.
 

 On September 23, 1918, the chairman of the state board wrote to the assessor of Sabine parish, calling for a copy of the rendition for the year 1918 of the Gould estate as rendered by Mr. Thomas, agent for the parish of Sabine.
 

 In reply to this letter under date of Sep
 
 *293
 
 tember 25, 1918, Mr. Vines, the assessor, wrote as follows:
 

 “You will also find values as listed for 1918 and values as would be according to resolution by your board.”
 

 Accompanying this letter was the following statement:
 

 “In making rendition for the year 1918, there was no stumpage given and values were extended as follows” — and then follows the classification, number of acres, and the valuation as originally made of $744,670, which the assessor called a tentative valuation.
 

 The other statement accompanying the letter was as follows:
 

 “According to resolution adopted by your board, fixing values on timber land and also authorizing! values extended on the maximum stumpage where stumpage was not given in rendition, the extensions would be as follows” —then follows the classification and the number of acres and the increased valuation of $1,070,740 as authorized by the board of state affairs.
 

 On September 27, 1918, the board of state affairs again wrote to the assessor of Sabine parish, in part, as follows:
 

 “We understand that the other timber owners in your parish have not returned the stump-age, but have simply given you the acreage. You will, therefore, aj>ply the maximum acreage valuation in the respective classes, adding $2 for the land whereon the timber stands. After you have made these corrections, kindly inform us what additional values will be added to your abstract, so that we can make the proper correction and addition to the abstract on file in this office.”
 

 This letter gave the increased valuation of all the assessable property in Sabine parish made by the board of state affairs, other than timber lands, as to which timber lands the letter concluded as follows:
 

 “As explained above, you will please figure the increases on the timber lands and pine stumpage that will be added to this value.”
 

 On October 5, 1918, the assessor furnished the state board the additions which he had made to his abstract on timber lands, showing an increase of the Gould.estate of $322,100.
 

 The conclusion is inevitable that the increase in the assessment complained of was made by the assessor some months after the original valuation had been made and agreed on between the assessor and Thomas, the agent for the Gould estate, ánd long after the police jury had acted on assessments as a board of reviewers. That said increase was so made by the assessor under instructions from the board of affairs can hardly be questioned. It is not contended, and indeed could not be, in view of the record, that Thomas, agent, or any one else representing the plaintiffs, had any notice prior to the increase that such increase would be made. The taxpayer was clearly entitled to such notice. Forest Lumber Co. v. Word, 146 La. 275, 83 So. 551.
 

 From all of which it follows that the plaintiffs are entitled to the relief prayed for.
 

 For the reasons assigned, the judgment appealed from is reversed and annulled, and it is now ordered that the increased assessment on the lands described in plaintiffs’ petition for the purposes of local taxation for 1918, complained of in plaintiffs’ petition, be canceled and annulled, and that the police jury of the parish of Sabine pay the costs of this suit.